STATE OF CONNECTICUT *v.* WALLACE A. HOLEMAN, JR.

REVIEW DIVISION OF THE SUPERIOR COURT

*Decided April 11, 1967*

---

*George Gilman,* public defender, for the defendant.

*C. Robert Satti,* assistant state's attorney, for the state.

BY THE DIVISION. The defendant, sixteen years of age, was originally charged with three counts of breaking and entering with criminal intent, in violation of § 53-76 of the General Statutes, which prescribes imprisonment for not more than four years; with one count of wilful injury to private property, in violation of § 53-126, which provides for a penalty of a fine of not more than $100 or imprisonment for not more than six months or both; and with one count of larceny of goods valued at over $15 but less than $250, in violation of § 53-63, as amended, which provides for a penalty of a fine of not more than $200 or imprisonment for not more than six months or both. After a partial trial, he pleaded guilty to one count of breaking and entering and to wilful injury to private property. The court imposed a sentence of commitment to the Connecticut reformatory for an indefinite term on each count, said sentences to run concurrently.

On December 13, 1965, the defendant and a companion stole six cans of gold spray paint and an electric drill, all of which were valued at $20, from a parked truck on a street in New London. The gold spray paint was used in acts of vandalism to spray cars in an automobile dealer's yard and in writing foul language on windows, buildings, trucks and a junior high school. It cost the automobile dealer $100 in labor for the repair of his cars.

On December 18, 1965, the defendant and the same companion broke into a hardware store and stole

four air guns. Entrance was gained by kicking a hole in the front window. On December 27, 1965, they went to a drive-in theater, where they broke into the concession stand and forced open a cigarette vending machine. They also entered the manager's office.

The defendant has a substantial juvenile record for setting fires, for breaking and entering on a number of occasions, and for fighting. On April 20, 1962, he was committed to the Connecticut school for boys, where he remained approximately a year. Thereafter, he was referred to the Juvenile Court for failure to pay in a restaurant. He was again referred to the Juvenile Court for stealing from a cash register, at which time he had a straight razor with him. On August 31, 1964, he was referred again for taking a motor vehicle without the owner's permission. He was returned to the Connecticut school for boys on September 2, 1964, where he remained until May 26, 1965.

Nor did he improve as an adult. On September 20, 1965, he was arrested for breach of the peace and fined. On January 5, 1966, he was charged with taking a motor vehicle without the owner's permission, and was sentenced to six months in jail and placed on probation for two years. On the very same day he pleaded guilty to two counts in the instant case, he was arrested in New London and charged with aggravated assault. He was armed with a knife and engaged in a fight with another man. The charge was changed to breach of the peace, for which he was sentenced to six months in jail, with execution suspended, and placed on probation for two years, with the understanding that he would be committed to the state hospital at Norwich, and he was admitted to the hospital.

At the time of sentencing, the state's attorney said: "Now, I'm frank to say that it's troublesome

to see a boy who is an antisocial, in a sense almost dedicated to misconduct and crime, and who obviously must have some deep-seated psychiatric emotional disturbance that leads him that way. And yet here he is, and the question is what to do with him? Now, I don't know anything else to do than to recommend that he go to the reformatory." The sentencing judge said: "The time comes when all patience and tolerance and resources of the court to rehabilitate seem to have come to an end."

In view of this defendant's history and prior record, and the nature and number of offenses which he committed, it is difficult to see how the trial judge could have adopted any other course than the one he did. For the protection of society it was necessary that the defendant be confined. The sentence was fair, just and reasonable, and should stand.

PALMER, HEALEY and COVELLO, Js., participated in this decision.